### In the Matter of Alfred M. SINDER, Debtor.

### SOCIETY BANK, N.A., Plaintiff,

### v.

### Alfred M. SINDER, Bernice Sinder, Shirley Sinder, Joseph Litvin, Trustee, Paul D. Gilbert, Trustee, Defendant.

Bankruptcy No. 3–86–02186.
Adv. No. 3–88–0189.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 28, 1989.

Thomas R. Noland, Dayton, Ohio, for plaintiff.

Ira Rubin, Dayton, Ohio, for debtor/defendant, Alfred M. Sinder.

Dennis L. Patterson, Craig I. Matthews, Dayton, Ohio, for Joseph Litven, trustee, Shirley Sinder and Bernice Sinder.

Paul D. Gilbert, Dayton, Ohio, trustee.

DECISION ON ORDER GRANTING MOTION OF DEFENDANTS JOSEPH LITVIN, TRUSTEE, SHIRLEY SINDER AND BERNICE SINDER TO DISMISS PLAINTIFF'S COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANT ALFRED M. SINDER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E)—orders to turn over property of the estate, (F)—proceedings to determine, avoid or recover preferences, (H)—proceedings to deter-

mine, avoid or recover fraudulent conveyances, (I)—determinations as to the dischargeability of particular debts, (J)—objections to discharges and (O)—other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.

## I. PROCEDURAL POSTURE

### A. Estate Case Filings

On August 22, 1986, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code (Doc. 2). The debtor's schedules list liabilities in excess of one million, three hundred thousand dollars ($1,300,000.00) and assets valued at two thousand, nine hundred forty-seven dollars and seventy-two cents ($2,947.72) (Doc. 4). A significant portion of the debtor's liability is based on an unsecured loan from Society Bank N.A., the plaintiff in this proceeding. This loan was the subject of state court litigation, in which the Bank obtained a judgment in the amount of one million, two hundred fifty thousand dollars ($1,250,000.00) against the debtor, prior to the filing of this bankruptcy.

Counsel for the plaintiff, on October 29, 1986, filed a Motion To Extend The Time In Which To File A Complaint To Deny Discharge Or Dischargeability Of Debt (Doc. 11). Counsel for the debtor filed a Memorandum In Opposition To Motion Of Society Bank To Extend Its Time Within Which To File A Complaint To Deny Discharge Or Dischargeability Of Debt (Doc. 15). A hearing was scheduled for November 28, 1986 (Doc. 16); however, following a phone conference with counsel for the plaintiff and counsel for the defendant, the court issued an Order (Doc. 17) canceling the scheduled hearing and granting the plaintiff thirty (30) days, following the completion of an examination of the debtor pursuant to Bankr. R. 2004, in which to file a complaint.

On February 17, 1987, plaintiff filed a Motion (Doc. 20) to compel the debtor to produce a number of documents requested during the discovery process. The court issued an Order (Doc. 21) setting this motion for hearing on March 19, 1987; however, the hearing was continued several times upon separate or joint requests of counsel and this motion was not heard until August 13, 1987 (Docs. 22, 23, 24, 26, 27, 30, 31, 32, 34, 35, 37, 38).

The court's Order compelling discovery was entered on August 24, 1987 (Doc. 39). The order provided, *inter alia*, that the Rule 2004 Examination of the debtor would take place on, or before, September 15, 1987, and that the plaintiff would have the right to recess the 2004 Examination from time to time until the debtor fully complied with the Order Compelling Discovery.

### B. Adversary Proceeding Filings

On August 19, 1988, the plaintiff filed a complaint (Doc. 1) seeking to deny the debtor's discharge, determine the debt due the plaintiff to be an exception to the debtor's discharge, determine property of the estate, turnover property of the estate, avoid preferential transfers, avoid fraudulent conveyances and avoid post-petition transfers. The complaint named as defendants: the debtor, the debtor's current spouse, Bernice Sinder, the debtor's former spouse, Shirley Sinder, Joseph Litvin, the named trustee of a trust established by the debtor, and Paul E. Gilbert, the Chapter 7 Trustee.

Counsel for Joseph Litvin, Bernice Sinder and Shirley Sinder, the non-debtor defendants, filed a Motion To Dismiss on September 30, 1988 (Doc. 10). Plaintiff filed a response on October 20, 1988 (Doc. 15). The non-debtor defendants filed their reply on November 4, 1988 (Doc. 19).

On October 14, 1988, the debtor defendant filed a Motion To Dismiss and Memorandum In Support Of Motion To Dismiss (Docs. 11 and 14). Plaintiff filed a response on November 30, 1988 (Doc. 22) and the debtor defendant filed his reply on January 3, 1989 (Doc. 28).

The Chapter 7 Trustee filed two documents in this adversary proceeding, the Trustee's Report (Doc. 18) and the Trustee's Reply (Doc. 27).

In reaching this decision, the court considered all the filings listed above, and also explored issues raised by the above, and

other related filings, during oral arguments held on March 24, `1989. At the conclusion of the oral arguments, the court offered the parties an opportunity to submit further evidence or memoranda; however, all parties declined to submit any further evidence or memoranda.

The court will address the motions to dismiss filed by the non-debtor defendants (Doc. 10) and the motion to dismiss filed by the debtor defendant (Doc. 11) to the extent these motions each seek to dismiss the plaintiff's causes of action involving the trustee's avoidance and recovery powers; and, the court will separately address the debtor defendant's motion to dismiss the plaintiff's cause of action seeking orders concerning a denial of discharge and a determination of dischargeability.

## II. THE MOTIONS TO DISMISS DIRECTED TO PLAINTIFF'S CAUSES OF ACTION INVOLVING THE TRUSTEE'S AVOIDANCE AND RECOVERY POWERS

The plaintiff alleges, in its first, fourth, fifth and sixth causes of action, preferential and fraudulent transfers by the debtor of money, real estate and other property. Plaintiff also alleges, in the third and sixth cause of action, that defendant Joseph Litvin, as trustee of the trust established by the debtor, was instrumental in effectuating transfers of funds to Shirley Sinder. In its request for relief, the plaintiff seeks orders determining certain property to be property of the estate and requiring such property to be turned over to the Chapter 7 Trustee, avoiding alleged fraudulent and preferential transfers made by the debtor, avoiding certain post-petition transfers of property of the estate, and the return to the estate of all property recovered from the avoided transfers.

The non-debtor defendants contend in their Motion To Dismiss (Doc. 10) that the complaint should be dismissed with respect to the claims made against them since (1) the plaintiff is not the real party in interest; (2) as a result, the court lacks subject matter jurisdiction and (3) the complaint fails to state a claim upon which relief can be granted. The second and third contentions hinge on the non-debtor defendants' first contention and the non-debtor defendants did not offer any argument in support of these contentions independent of their primary argument that the plaintiff lacks standing and cannot exercise the trustee's avoidance and recovery powers. The debtor defendant's Motion To Dismiss (Doc. 11) is, in part, directed to the plaintiff's causes of action involving the trustee's avoidance and recovery powers and contains arguments similar to the non-debtor defendants' arguments. The court will issue a single ruling applicable to these similar arguments in both the non-debtor defendants' and the debtor defendant's motions to dismiss.

Plaintiff, in response, contends that several courts have held that parties other than the trustee or debtor-in-possession can bring actions under Code provisions which authorize the trustee to bring avoidance and recovery actions. Plaintiff further states that it does not desire to proceed as plaintiff in this adversary proceeding and suggests that, upon the withdrawal or removal of the present trustee, a newly appointed trustee be substituted as plaintiff in this adversary proceeding.

### A. The Plaintiff's Standing As A Real Party In Interest To Exercise The Bankruptcy Trustee's Recovery And Avoidance Powers

The complaint of the plaintiff, a creditor in this bankruptcy, invokes 11 U.S.C. § 542(a),[1] § 547(b),[2] and § 548(a)[3] and

---

1. § 542. Turnover of property to the estate.
    (a) Except as provided in subsection (c) or (d) of this section an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account

for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

2. § 547(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;

§ 549(a)[4] of the Code. The Bankruptcy Code by clear and specific language vests the power to bring actions pursuant to these sections in the bankruptcy trustee. These causes of action represent a significant portion of the arsenal bestowed by Congress on the bankruptcy trustee to enable the trustee to fulfill the statutory duties imposed by the Bankruptcy Code (11 U.S.C. § 704). Courts have unwaveringly honored these Code provisions and foreclosed attempts by other parties to share, or appropriate to themselves, these statutorily conferred powers of a bankruptcy trustee. *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir.1988); *In re El San Juan Hotel Corp.,* 841 F.2d 6, 9 (1st Cir. 1988); *Nebraska State Bank v. Jones,* 846 F.2d 477, 478 (8th Cir.1988); *In re Feldhahn,* 92 B.R. 834, 836 (Bankr.S.D.Iowa 1988); *In re V. Savino Oil & Heating Co., Inc.,* 91 B.R. 655, 657 (Bankr.E.D.N.Y. 1988); *Folz v. BancOhio National Bank,* 88 B.R. 149, 150 (S.D.Ohio 1987); *Gerken v. Harris (In re Auxano, Inc.),* 87 B.R. 72 (Bankr.W.D.Missouri, 1988); *In re Grell,* 83 B.R. 652, 657 (Bankr.D.Minn., 1988); *Mincey v. Milam (Matter of Milam),* 37 B.R. 865, 867–868 (Bankr.N.D.Ga.1984).

The Code does provide that parties other than a Chapter 7 Trustee may bring action pursuant to these sections. There is explic-

it authority for a debtor, in the statutorily authorized position of debtor-in-possession, to exercise the trustee's avoiding powers. "Under 11 U.S.C. § 1107(a)[5], a Chapter 11 debtor-in-possession is generally accorded *de jure* trustee status and thus vested with the authority to avoid transfers of property under 11 U.S.C. § 544(b), 548 and other avoidance powers". *In re V. Savino Oil & Heating* at 656. *See also Hoyos Precsas v. Banco de Ponce (In re Hoyos Precsas),* 73 B.R. 338, 339 (Bankr.D.Puerto Rico, 1987); *Enserv Co., Inc. v. Manpower, Inc./CA Peninsula (In re Enserv Co., Inc.),* 64 B.R. 519, 520 (9th Cir. BHP 1986); *Matter of Einoder,* 55 B.R. 319, 322 (Bankr.N.D.Ill., 1985).

The plaintiff is also correct in its assertion that case law has developed authorizing parties, other than a trustee or a debtor-in-possession, to bring avoidance and recovery actions. Courts have recognized that there is often an inherent tension in the duties of a debtor-in-possession who could be attempting to reorganize by continuing business relations with its creditors and insiders, and, at the same time, could be obligated to bring avoidance and recovery actions against those very same creditors and insiders. In such circumstances, and in other carefully limited circumstanc-

---

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. § 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, ...

4. § 549. Postpetition transactions.

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

5. § 1107. Rights, powers, and duties of debtor in possession.

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

es, courts have authorized a Creditor's Committee to bring actions pursuant to the trustee's avoidance powers. *Savino* at 657; *In re Nicolet, Inc.*, 80 B.R. 733, 739 (Bankr.E.D.Pa., 1987); *In re Philadelphia Light Supply Co.*, 39 B.R. 51, 52 (Bankr.E.D.Pa., 1984); *Unsecured Creditors' Committee v. Farmers Savings Bank (In re Toledo Equipment Co., Inc.)*, 35 B.R. 315, 320 (Bankr.N.D.Ohio, 1983); *Matter of Monsour Medical Center*, 5 B.R. 715, 718–719 (Bankr.W.D.Pa.1980). These courts, however, recognizing that the relevant statutes only provide for the trustee or debtor-in-possession to exercise these powers, have been unwilling to recognize any inherent authority even for an appointed Creditors' Committee to institute such actions based on any implied right to exercise the trustee's avoidance and recovery powers. As a result, courts impose various conditions which Creditors' Committees must meet in order to be granted the authority to institute such actions. The court in *In re Toledo Equipment Co., Inc.*, at 319 stated:

> This implied authorization is not however, an unlimited or unqualified grant. As indicated in the cases just cited, the Committee's standing is triggered only when the DIP's inactivity become unjustified or abusive of its discretion. [citations omitted].

The court further stated at 320:

> Therefore, it is held that an unsecured creditor's committee has standing to bring an action to recover a preference if the debtor-in-possession has abused its discretion in prosecuting or has unjustifiably failed to bring such an action. It is also held that prior to intervening in or initiating an action on behalf of the estate, the creditor's committee must apply to the Court for leave to take that action. The application must show: (1) that the creditor's committee has made a request of the debtor-in-possession regarding the initiation or prosecution of an action which will benefit the estate, (2) that the request has been refused, (3) a prima facia demonstration that a colorable claim exists which, if successful, would benefit the estate, and (4) the creditor's

committee's grounds for contending that the debtor-in-possession's inactivity on the claim is unjustifiable or abusive of this discretion.

*Cf. Beechwood West Homeowners' Association v. Gentry, Locke, Rakes & Moore (In re Wilson)*, 77 B.R. 532, 535 (Bankr.W.D.Va.1987).

While some courts have been willing to extend to appointed Creditors' Committees, upon timely application and in accordance with various criteria establishing cause, the authority to bring actions pursuant to the bankruptcy trustee's avoidance and recovery powers, a search of existing authority has not revealed any decision in which a court was willing to extend such authority to an individual creditor, nor has the plaintiff otherwise presented authority to support its position.

### B. The Plaintiff's Argument Pursuant To Bankruptcy Rule 7017

The plaintiff argues that it is not interested in pursuing this litigation itself; and, suggests that, upon a withdrawal or removal of the present trustee, a newly appointed trustee be substituted as plaintiff pursuant to Bankr.R. 7017 (F.R.Civ.P. 17(a)).

Bankruptcy Rule 7017, which makes Rule 17(a) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) applicable in adversary proceedings provides in relevant part:

> (a) Every Action shall be prosecuted in the name of the real party in interest ...
>
> . . . .
>
> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

A significant problem presented by this argument is that the trustee did not join in

this request, nor has the trustee filed a request to withdraw, nor has the trustee otherwise sought to have a successor trustee appointed. Further, there is no motion filed in the estate case or this adversary proceeding seeking removal of the appointed trustee (11 U.S.C. § 324).

The removal of a trustee is a matter committed to the court and may only be accomplished upon motion, after notice and hearing and, even then, only for cause (11 U.S.C. § 324). The appointment of a successor trustee is a matter committed to the United States Trustee and may occur upon the resignation of a trustee (11 U.S.C. § 703). It is not consistent with the concepts embodied in these provisions of the Bankruptcy Code that the independence and discretion of a bankruptcy trustee could be compromised by an "agreed withdrawal" not subject to notice and an opportunity to be heard by the court or consideration by the United States Trustee.

There is no motion filed seeking to remove the present trustee, nor is there evidence indicating the present trustee intends to resign. The present trustee continues to file interim reports in the estate case (Doc. 43, Interim Report Of Trustee, filed May 8, 1989). There is no evidence that a successor trustee is contemplated.

In fact, the record of this case and proceeding contains reports by the trustee stating that he is continuing to fulfill his statutory duties in the administration of this bankruptcy, at least to his, if not the plaintiff's, satisfaction. The trustee stated quite emphatically in written reports (Docs. 18 and 27) and oral argument that he had investigated, weighed and considered the merits of the litigation commenced by the plaintiff and decided against filing such a complaint. As disquieting as the trustee's decision may be to the plaintiff, such a determination by the trustee is quite consistent with the flexibility and discretion contemplated by the legislative scheme and recognized in judicial decisions. The court stated in *Savino Oil & Heating,* 91 B.R. at 656:

> The commencement of litigation by a trustee or debtor-in-possession on behalf of an estate in bankruptcy under the avoidance provisions is permissive and not mandatory. The responsibilities of a trustee or debtor-in-possession to collect assets and to effectuate the policy of equality of distribution do not per se compel litigation by such fiduciaries. To the contrary, a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to sue or not to sue.

Similarly, the court in *Mincey v. Milam,* 37 B.R. at 868 in holding that an individual creditor lacked standing to institute an action to avoid an alleged fraudulent conveyance echoed these policy concerns:

> Additionally, the court is persuaded of the importance of the statutory policy of permitting only the trustee to determine whether the avoiding powers granted should be exercised at all. This decision will necessarily weigh a number of competing factors, including the merits of the possible action against the debtor, the likelihood of prevailing, the litigation cost to the estate, and the ultimate net benefit to the estate. Such factors may not be very important to a disappointed creditor. The orderly administration of bankruptcy law would not be served by permitting creditors holding unsecured claims to decide independently of the trustee to institute suits against the debtor. Without the safeguard of an independent, impartial trustee to review the merits of creditor claims which are frequently biased, the debtor might be forced to defend numerous proceedings that waste instead of conserve assets, that unreasonably delay administration of the estate, and that deny the debtor the possibility of rehabilitation and a fresh start in both the economic and the psychological terms envisioned by the Code.

Although courts generally do not favor granting motions to dismiss (*Matter of Schwartzman* ), 63 B.R. 348, 355 (Bankr. S.D.Ohio 1986), and the last sentence of F.R.Civ.P. 17(a) (B.R. 7017) includes language suggesting dismissal is not appropriate until "reasonable time" has been allowed for ratification, joining or substitu-

tion by the real party in interest, these concepts do not prevent granting the motions to dismiss. All "reasonable time" contemplated by the provisions of Rule 17, to the extent such time provisions would be applicable in this proceeding, has long since expired and the real party in interest, the appointed qualified and presently acting trustee in bankruptcy specifically declined to commence, ratify, join or be substituted in the plaintiff's complaint. That determination of the trustee will be honored by the court.

An underlying concern of the plaintiff in this proceeding, and, in fact, the reason conceded by the plaintiff for the timing of the filing of the complaint, is the statute of limitations applicable to certain recovery and avoidance actions of the bankruptcy trustee (11 U.S.C. § 546(a) and § 549(d)). As the Sixth Circuit Court has stated, "The two-year limitations period begins to run on the date of the trustee's appointment and expires twenty-four (24) months later, irrespective of whether the last day falls on a Saturday, Sunday or holiday." (footnote omitted). *In re Butcher,* 829 F.2d 596, 601 (6th Cir.1987). *See also, Matter of Metropolitan Company,* 85 B.R. 783, 786–88 (Bankr.S.D.Ohio 1988).

On the date the statute of limitations expired, twenty-four (24) months from the date the trustee in bankruptcy was appointed, there was an acting trustee in this bankruptcy, he possessed the avoidance and recovery powers conferred by the Bankruptcy Code, he was capable of instituting litigation against the defendants, he had investigated the avoidance and recovery issues presented in this case (although not to the plaintiff's satisfaction) and he concluded (although not to the plaintiff's satisfaction), that he would not commence or join in such litigation. Accordingly, the applicable two (2) year limitation period expired without the appointed, qualified and acting trustee in bankruptcy having commenced any avoidance and recovery actions pursuant to provisions of the Bankruptcy Code. As the court has previously

noted, "While this court recognizes counsel for the plaintiff's concern that issues be determined on their merits, it must also be recognized that merit determinations include applicable statute of limitation defenses." *Metropolitan* at 788.

Nothing in the filings or arguments presented in this case or proceeding persuades the court that the plaintiff could not have received a satisfactory determination of the trustee's intent to proceed with avoidance and recovery actions; or, absent a satisfactory receipt of the trustee's intent, could not have timely taken action to bring its concern before the court for determination. Although such actions by the plaintiff may or may not have met with success, the plaintiff's arguments concerning substitution pursuant to Rule 17(a), are, at this stage of this case and proceeding, not persuasive.

Accordingly, the court determines that the Motion To Dismiss the plaintiff's complaint as it pertains to the non-debtor defendants, Bernice Sinder, Shirley Sinder and Joseph Litvin (Doc. 10) is GRANTED and this proceeding is DISMISSED as to those parties; and, the Motion To Dismiss filed by the debtor defendant (Doc. 10) is likewise GRANTED as it relates to the plaintiff's causes of action concerning the trustee's avoidance and recovery powers.[6]

The debtor defendant's motion to dismiss the plaintiff's complaint alleging causes of action seeking denial of the debtor's discharge and a determination that the debt owed the plaintiff is an exception to discharge is separately discussed and determined in this decision.

## III. DEBTOR'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT ALLEGING CAUSES OF ACTION PURSUANT TO 11 U.S.C. § 727 AND § 523

The debtor raises two principal arguments in support of these branches of his Motion To Dismiss (Doc. 11). First, the plaintiff failed to plead sufficient facts to

**6.** The court expresses no opinion concerning the trustee's causes of action, if any, not governed

by 11 U.S.C. § 546(a) and § 549(d).

satisfy the requirements of Bankr. R. 7009 (F.R.Civ.P. 9(b))[7] and Bankr. R. 7012 (F.R. Civ.P. 12(b)(6)).[8] Second, the equitable doctrines of laches and waiver demand that this action seeking denial of the debtor's discharge and denial of the dischargeability of the debt owed the plaintiff be dismissed. Plaintiff argues that its complaint (Doc. 1) complies with the pleading requirements of both Rules 9(b) and 12(b)(6); and, further, in the facts and circumstances of this case, the defenses of laches and waiver are not available to the defendant.

Counts I and II of the plaintiff's complaint are specifically addressed to the debtor. Count I sounds in fraud and seeks a denial of the debtor's discharge pursuant to the provisions of 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5). Count II likewise sounds in fraud and seeks a determination that the debt owed the plaintiff is an exception to the debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(B) and (a)(6).

### A. Debtor Defendant's Arguments Based On Bankruptcy Rules 7009 and 7012

■ This court has had occasion to fully address the issue of the appropriate standards for granting motions pursuant to Bankruptcy Rules 7009 and 7012 (Fed.R. Civ.P. 9(b) and 12(b)(6)) in the context of § 523 and § 727 of the Code. This court has stated with respect to a 12(b)(6) motion that "[t]he general rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts, in support of his claim which would entitle him to relief". *Matter of Schwartzman*, 63 B.R. 348, 355 (Bankr.S.D.Ohio 1986) (citations omitted). This court further stated in *Schwartzman* at 355 that "[t]he rationale behind the general Rule derives from

the finality of sustaining such a motion. Because dismissal of an action constitutes a judgment on the merits and is accorded preclusive effect, the courts generally disfavor granting a motion to dismiss." It is also important to recognize that a motion to dismiss tests the legal sufficiency of the plaintiff's complaint—whether the complaint sets forth any legal theory upon which recovery could be based (*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)) and the court in determining a motion to dismiss must construe the facts in a light most favorable to the plaintiff. *In re Smurzynski*, 72 B.R. 368, 369 (Bankr.N.D.Ill., 1987).

With respect to the 9(b) motions, the court noted in *Schwartzman* at 355 that the plaintiff must "allege time, place and contents of the misrepresentations upon which he relied and the plaintiff must state with particularity the specific circumstances giving rise to the complaint." The court further stated, "this specificity is particularly critical when the fraud or misrepresentation is not demonstrated by tangible evidence such as statements signed by the parties or other documents related to the transaction in question." *Schwartzman* at 355; however, the court also noted, "[t]hat a balancing factor in completing an analysis of the specificity requirements of Rule 9(b) is the recognition that the essence of fraud and misrepresentation is the absence of truthfulness and the full disclosure required in the particular circumstances. For that reason, 'Rule 9(b) does not require the pleading of detailed evidentiary matter.'" (citation omitted) *Schwartzman* at 356.

Plaintiff's complaint, as it pertains to both the § 727(a)(2)—(a)(5) and the § 523(a)(2) and (a)(6) causes of action, is based on and supplemented by tangible evi-

---

7. F.R.C.P. 9(b)

(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

8. F.R.Civ.P. 12(b)(6)

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted, ....

dence such as statements allegedly signed by the parties and other documents allegedly related to the transactions in question (Plaintiff's attached Exhibit 1–3). Exhibit 1 consists of a proposed settlement agreement with respect to an application to the Federal Communication Commission for a license to operate a television station in Dayton which proposes to pay the debtor eight hundred and seventy-five thousand dollars ($875,000.00) over a six year period. While this Agreement does not bear the signature of the debtor, one of the attachments to Exhibit 1, purports to be a notarized affidavit signed by the debtor in which he acknowledges the existence of this document and adds his approval. Exhibits 2 and 3 consist of financial statements, allegedly signed by the debtor and dated January 10, 1984, in which the debtor lists liabilities of five thousand dollars ($5,000.00) and a net worth of one million, one hundred forty-six thousand, nine hundred dollars ($1,146,900.00). These figures are in stark contrast to those now listed in the debtor's schedules—liabilities of $1.2 million and assets of two thousand, nine hundred forty-seven dollars and seventy-two cents ($2,947.72).

Count 1 of plaintiff's complaint alleges that substantial sums are not accounted for in the debtor's schedule, while Count II asserts that the debtor may not have ever possessed those assets and submitted fraudulent statements which induced the plaintiff to lend the debtor a substantial amount of money. Without in any sense expressing a view that the plaintiff may prevail on all, or any portion, of its complaint, but, as required at this stage of the proceeding, viewing the complaint in a light most favorable to the plaintiff, it is apparent that, although the language of the complaint does not contain detailed evidentiary matters beyond a recitation of the relevant provisions of the Code, when the complaint is examined in conjunction with the attached exhibits, it does state a cause of action and does sufficiently satisfy the minimum Rule 9(b) requirements of alleging the time, place and contents of the misrepresentations upon which the plaintiff relied, and thereby also satisfy the notice pleading objective of Rule 12(b)(6). The appropriate completion of the discovery process would enable all parties to understand the full extent of the claims and defenses present in the proceeding. *Schwartzman* at 356.

### B. Debtor Defendant's Arguments Based On Defenses Of Laches And Waiver

Pursuant to the Order For Meeting Of Creditors, Combined With Notice Thereof And Automatic Stay (Estate Case, Doc. 4), the Meeting Of Creditors was set for September 29, 1986. Bankruptcy Rule 4004(a) fixes the deadline for filing a complaint objecting to the discharge of a Chapter 7 debtor at sixty (60) days following the first date set for the meeting of creditors. Bankruptcy Rule 4004(b) permits the court to extend for cause the time for filing such a complaint. Similarly, Bankr.R. 4007(c) fixes the time for filing any complaint objecting to the discharge of a debt specified in § 523(c) (this includes debts arising under § 523(a)(2), (a)(4) and (a)(6) of the Code) at sixty (60) days following the first date set for the meeting of creditors. *See Matter of Beam*, 73 B.R. 434, 435–37 (Bankr.S. D.Ohio 1987).

From the outset, this case appeared destined for the unusual and difficult. The parties had already engaged in a State Court action in which the plaintiff secured a prepetition judgment. In this court, the plaintiff's initial filing, on October 23, 1986, was a motion requesting an order that the debtor submit to an examination pursuant to Bankr.R. 2004 (Estate Case, Doc. 9). This was followed, on October 29, 1986, by a Motion to extend the time within which to file a complaint objecting to dischargeability of a debt (Estate Case, Doc. 11). The court granted plaintiff's motion and ordered the debtor to submit to a 2004 Examination (Estate Case, Doc. 12); however, the debtor had filed an objection to the motion seeking an extension of time on the basis that it was not filed in good faith and that it represented an attempt by plaintiff to "poison the atmosphere", "harass the debtor" and delay the completion of the case (Estate Case, Doc. 15). The court in

an order entered December 1, 1986 granted the extension and stated, in part:

> The court is persuaded that the issues involved are sufficiently complicated and counsel ... efforts, at least at this point, are sufficiently indicative of good faith and a genuine effort to make an informed decision concerning the filing of an appropriate complaint that the court should grant an extention for the limited period of time discussed in the phone conference on November 26, 1986. The extention granted shall be for the limited period of thirty (30) days following the completion of an examination to be conducted in accordance with Bankr.R. 2004. *It is clearly in the interest of both parties to arrange for the prompt scheduling and completion of the proposed Rule 2004 examination.* (Estate Case, Doc. 17) (emphasis added)

No motion seeking modification or reconsideration of this order was filed.

Plaintiff next filed a Motion To Compel Discovery (Estate Case, Doc. 20) in which it stated that the debtor had not complied with certain discovery requests. The court set this Motion for hearing for March 19, 1987 (Estate Case, Doc. 21). A series of requests for continuance were filed by each party. Upon plaintiff's Motion (Estate Case, Doc. 22), **with the defendant's consent** (Estate Case, Doc. 23), the hearing was continued to April 7, 1987. **At the defendant's request** (Estate Case, Doc. 26), the hearing was continued to April 21, 1987. Thereafter, upon counsel for the plaintiff's motion, without objection from counsel for the defendant, the hearing was continued to July 1, 1987 (Estate Case, Doc. 32), and then to August 13, 1987 (Estate Case, Doc. 35).

On August 24, 1987, the court entered an Order Compelling Discovery (Estate Doc. 39) which provided in part: "IT IS ORDERED that Society Bank, N.A. shall have the right to recess the 2004 Examination from time to time until such time debtor has fully complied with this Order and production pursuant to debtor's compliance has been obtained, and thereafter such examination shall be brought to conclusion within reasonable time." No motion seeking modification or reconsideration of this Order was filed.

Plaintiff conducted a Rule 2004 Examination on September 2, 1987, and continued discovery efforts through October of 1987. The court notes, by counsel for the plaintiff's own admission in his affidavit attached to Doc. 22, there was no discovery activity specifically directed to the defendant after October of 1987, although the plaintiff contends that the defendant's failure to comply with the court's previous order compelling production of documents prevented the 2004 Examination from being completed and, as such, the time for filing a complaint has not yet begun to run.

The defendant argues that he has complied with the Order Compelling Discovery and the 2004 Examination has either been concluded, or the length of time between the 2004 Examination conducted on September 2, 1987 and the filing of this proceeding on August 19, 1989 has been so lengthy, it would be inequitable to delay issuing the debtor's discharge and the plaintiff's complaint should be dismissed through the application of the equitable doctrines of laches and waiver in this proceeding.

Courts have recognized the defenses of laches and waiver in the context of bankruptcy proceedings [*In re Hicks*, 62 B.R. 681, 683 (Bankr.S.D.Cal.1986); *In re Herron*, 49 B.R. 32, 35 (Bankr.W.D.Ky.1985); *Matter of McElmurry*, 23 B.R. 533 (D.W.D.Missouri, 1982); *Matter of Swanson*, 13 B.R. 851, 855 (Bankr.D.Idaho 1981)]; however, the court is not persuaded that the application of these doctrines is dispositive of the issues before the court. The application of these doctrines is a matter of judicial discretion and is determined by the specific factual circumstances of a particular proceeding.

The vexing tension present in this proceeding is created by two competing policy objectives embodied in the Bankruptcy Code—rewarding the honest debtor with a fresh start, including the benefits of a timely issued discharge, and recognizing debtor misconduct and dishonesty by deny-

ing a requested discharge or excepting a specific debt from discharge.

The court begins by noting that the importance of the debtor's discharge is central to an individual's bankruptcy. The Supreme court in *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970), a case applying the Bankruptcy Act, stated, "The basic purpose of the Bankruptcy Act is to give the debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." (citations omitted). The court admonished that "[t]he various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." (citation omitted). These principles retain continued vitality in decisions applying the Bankruptcy Code.

This court, in *Matter of Beam*, 73 B.R. 434, 436 (Bankr.S.D.Ohio, 1987), explored the competing interests of the timely issuance of a debtor's discharge and the filing of a complaint to determine the dischargeability of a debt in a decision denying a motion to extend the time to file such a complaint after the statutory time period had expired. The court stated,

> Once the Rule 4007(c) time has elapsed a properly scheduled creditor can never raise the question of the nondischargeability of a claim on any of these grounds in the bankruptcy Court or in any other forum.
>
> The result is automatic and sometimes leads to harsh results. However, Congress intended to establish a system whereby certain types of nondischargeability claims would be automatically cut off after a relatively short period of limitations in order to prevent debtors from being harassed by creditors after their claims had been discharged in the bankruptcy. Congress meant to cure the abuse whereby debtors were routinely sued by creditors long after bankruptcy creditors claiming that their claims were not discharged because of fraud or a false financial statement.

*Beam* at 436, quoting *In re Kirsch*, 65 B.R. 297, 299–300 (Bankr.N.D.Ill.1986). *Beam* further cited at 436–437, *In re Klein*, 64 B.R. 372, 375 (Bankr.E.D.N.Y.1986) where the court held:

> Movant protests mightily that to deny his motion for procedural reasons is improper, particularly in light of his belief that debtor engaged in serious acts of misconduct which should bar any discharge. Such emotional contentions are understandable. As a general rule, justiciable controversies should be substantively decided and not barred by procedural technicalities, unless some important policy or purpose is served. However, Bankr. Rules 4004(a) and (b), 4007(c) and 9006(b)(3) do indeed reflect an important policy or purpose and their enforcement is basic to proper bankruptcy administration.
>
> Fundamental to our insolvency laws is the notion that bankruptcy in the life of an individual is a passing phenomenon, after which life must go on. The viability and rapidity of that process is the essence of the discharge in bankruptcy and related fresh start doctrine ... [Bankruptcy Rules] reflect a considered determination that a final cut-off date insuring that debtors will be free after a date certain, outweighs individual hardship to creditors that may be caused by rigid adherence to the rules. *See, American Express Company v. Waldman (In re Waldman )* 33 B.R. 328, 331 (Bankr.S. D.N.Y.1983).

█ The opportunity for the debtor to timely receive this fresh start benefit is balanced by the responsibility of the honest debtor to fully comply with the requirements of the bankruptcy process, particularly the requirement of full disclosure of all required information. *In re Ophaug*, 827 F.2d 340, 343 (8th Cir.1987); *In re Hunter*, 771 F.2d 1126, 1130 (8th Cir.1985). *In re Kroh*, 89 B.R. 808, 814 (Bankr.W.D. Mo.1988); *In re Gibson*, 77 B.R. 829, 831 (Bankr.D.Colo.1987). "A trustee's or creditor's objections to discharge transposes Section 727 into the vehicle through which this court can preclude abusive debtor con-

duct." *In re Shapiro*, 59 B.R. 844, 847 (Bankr.E.D.N.Y.1986). As the First Circuit Court Of Appeals noted:

> On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." [*Matter of*] *Mascolo*, 505 F.2d [274] at 278 [ (1st Cir.1974) ]. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *See In re Tabibian*, 289 F.2d 793, 797 (2d Cir.1961); *In re Shebel*, 54 B.R. [199] at 202 [ (Bankr.D.Vt.1985) ].

*In re Tully*, 818 F.2d 106, 110 (1st Cir.1987).

Without suggesting any determination concerning the allegations of the plaintiff's complaint, it must be noted that, at this stage of the proceeding, the plaintiff's complaint does raise serious issues concerning the debtor's alleged assets, his alleged representations concerning those assets and the alleged dispositions of these assets through transfers inconsistent with significant provisions of the Bankruptcy Code. The alleged discrepancies in the debtor's financial presentations are heightened by the amount of the assets and the debtor's activities as a sophisticated businessperson.

Additionally, there is a valid and enforceable order from this court extending the time within which a complaint could be brought seeking a dischargeability determination or a denial of the debtor's discharge for a "period of thirty (30) days following the completion of the 2004 Examination to be conducted in accordance with Bankruptcy Rule 2004". (Estate Doc. 17) (emphasis added) The Defendant did not object to this Order, nor was any motion filed seeking modification of or relief from this provision of the Order. Thereafter, a further Order (Estate Doc. 39) was entered allowing the plaintiff to recess the 2004 Examination from time to time until there was full compliance with certain discovery production requests. Again, no objection to this Order was filed, nor was any motion seeking modification or relief from its provisions filed. To the extent that the debtor believed that the provisions of these Orders should no longer have prospective application, a motion seeking such relief could have been filed, or the issue could have otherwise been brought to the court's attention.

Although the court notes that the plaintiff did not seek further court orders, when, according to the plaintiff, the debtor failed to comply with the order compelling production, the court is not persuaded that the plaintiff's failure to act necessitates dismissal of plaintiff's complaint.

The early episodes of lack of cooperation between counsel, the various continuances requested by each party individually, and both parties jointly, the delay in answering and fulfilling discovery requests—all suggest that neither party presents equitable arguments from a totally pure posture.

Finally, while the debtor initially had no affirmative duty to take any action in this court in order to receive his discharge, that situation changed when the court entered orders extending the plaintiff's time for filing a complaint and compelling discovery. Nothing prevented the debtor from seeking an order terminating the discovery process, requiring the plaintiff to take action by a certain date, requesting the court to issue the debtor's discharge, or, in some fashion, seeking to alter these existing orders.

The court determines that although the provision of the Code are to be construed liberally to effectuate the fresh start policy objective, this must be accomplished in a manner that attempts to harmonize all of the sections and competing interests embodied in the Code, including the denial of discharge and determination of discharge-

ability provisions. This court is persuaded that the reconciliation of these competing interests can be best accomplished in this proceeding by permitting the plaintiff to maintain its complaint as it relates to the § 523 and § 727 causes of action.

Accordingly, the defendant's Motion To Dismiss as it is directed to the plaintiff's causes of action pursuant to 11 U.S.C. § 727 and § 523 is DENIED.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.